## UNITED STATES

### v.

### ONE 1953 MODEL G. M. C. PICK-UP TRUCK.

### Civ. No. 282.

United States District Court,
M. D. Georgia, Athens Division.

July 14, 1954.

---

Frank O. Evans, U. S. Atty., and Floyd M. Buford, Asst. U. S. Atty., Macon, Ga., for libellant.

D. B. Phillips, Norcross, Ga., and Otis N. Pharr, Dacula, Ga., for defendant.

BOOTLE, Judge.

This is a libel of information brought by the United States of America under Sections 3116 and 3321 of the Internal Revenue Code, 26 U.S.C.A. §§ 3116, 3321, seeking the forfeiture to the United States of one 1953 model G.M.C. truck, Motor No. A–228496500.

The libel of information alleges that said truck was legally seized on land in Walton County, Georgia, on or about March 12, 1954, by investigators of the Alcohol and Tobacco Tax, Internal Revenue Service, Treasury Department, and Georgia State Revenue Agents; that said truck was then and there used in the operation of a distillery for the production of distilled spirits on which the tax imposed by the laws of the United States had not been paid nor was the same to be paid and that said distillery had not been registered nor had bond therefor been given as required by the

revenue laws of the United States; that said truck was used by Leonard C. Jackson, Robert Williams, Sr., and others, in violation of the Internal Revenue laws of the United States on divers occasions between February 1, 1954, and March 12, 1954, in the operation of a distillery as above recited and more specifically that said truck was used on February 1, 1954, in the removal, deposit, and concealment of 500 pounds of sugar, 100 pounds of malt, and 4 pounds of yeast, and on March 5, 1954, in the removal, deposit, and concealment of 500 pounds of sugar, 100 pounds of malt, and 2 pounds of yeast, and on March 6, 1954, in the removal, deposit, and concealment of 500 pounds of sugar and 4 pounds of yeast, which yeast, sugar, and malt are materials proper, used, and intended to be used for and in the production of distilled spirits whereon a tax is imposed by the laws of the United States, which tax had not been paid nor was the same to be paid, with the intent to defraud the United States of the tax due on the distilled spirits produced and intended to be produced at said distillery and with said materials.

A responsive pleading was filed by W. E. Jackson in which he denies each and every allegation as contained in the libel of information, sets up that he is the owner of said truck, claims the same, and attaches a copy of a bill of sale of said truck from L. C. Jackson to himself, dated January 16, 1954. In said pleading said claimant prays that said truck be returned to him.

Upon the trial to the Court without a jury, the evidence was substantially as follows:

On December 11, 1953, L. C. Jackson of Loganville, Walton County, Georgia, applied for and obtained a Georgia 1953 license tag bearing the number AC–38129 for a 1953 model G.M.C. pickup truck, with Motor No. A–228496500, this evidence being furnished by Mr. Merritt Scoggins, a representative of the Georgia State Revenue Department, the original application being introduced in evidence.

Mr. Jerome I. Oxman of the Piedmont Feed & Grocery Company of Atlanta, Georgia, testified and produced records to show that on February 1, 1954, a truck bearing the above mentioned license tag was loaded at his place of business with five 100-pound sacks of sugar, one 100-pound sack of malt, and 4 pounds of yeast, and again on February 23, 1954, with six 100-pound sacks of sugar, one 100-pound sack of malt, and 4 pounds of yeast, and again on March 6, 1954, with five 100-pound sacks of sugar and 4 pounds of yeast. He testified further that on February 1, 1954, the driver or operator of said truck gave his name and address as "Ray Claxton, Powder Springs, Georgia," and that on February 23, 1954 and also on March 6, 1954, the driver or operator of said truck gave his name and address as "Jim Sawyer, Redan, Georgia."

Mr. Oxman testified further that he recognized both L. C. Jackson and his son W. E. Jackson, both of whom were present in Court at the trial, as having been present at his place of business on one or more of the three occasions when the truck bearing said tag was there; to wit, on February 1, February 23, and March 6, 1954. He did not recall whether both men were present on each occasion or any occasion, but he was certain that he had seen each of them there at the time of one or more of the purchases of said material.

On March 5, 1954, State Revenue Agent Holcombe accompanied by State Revenue Agent Elliott and Deputy Sheriff Howard went to the home of L. C. Jackson, carrying with them a state search warrant. The officers knocked on the door of the house but were unable to locate anyone at the residence and no one answered the knock though they heard a baby crying in the house. On this occasion, the truck in question was parked in the yard a few feet back of the Jackson home. There was on the truck at that time 500 pounds of sugar, 100 pounds of malt or bran, and 2 packages of yeast.

On March 12, 1954, federal and state revenue agents, including Mr. Holcombe, raided an unregistered distillery some three miles from the home of L. C. Jackson. They arrested at the still L. C. Jackson, Robert Williams, Sr., and two other men. They found at the still a quantity of mash which was sugar mash; that is to say, sugar was one of its ingredients. There was a path leading from the home of Robert Williams, Sr., to the still, the still and the home being about 500 yards apart. In rear of the home of Robert Williams, Sr., was found the truck in question with nothing loaded on it at the time. This truck was equipped with mud-grip tires. The officers testified that they found leading from the public road which ran in front of the home of Robert Williams, Sr., a field road which led to the vicinity of the still. At a point on this field road approximately 300 yards from the still they located a place where apparently a truck had previously stopped and where barrels had been unloaded. The officers came to this conclusion because of marks visible to them on the ground. A path led from that point to the still. They found on this field road tire marks made by the same type of tires as those found on this truck. After L. C. Jackson was arrested, he was questioned as to how he arrived at the still and stated that his son brought him to the still in the truck and that his son had gone. The officers found the truck involved in this case back of Robert Williams' house with no one in it. The officers asked L. C. Jackson for a key to the truck and he at first produced some keys which were apparently house keys. Being asked again by the officers for the key to the truck, he produced a vehicle key which fit the ignition lock on the truck in question.

On an occasion approximately six weeks prior to March 5, 1954, State Revenue Agent Holcombe went to the home of L. C. Jackson and at that time observed a number of vehicles parked in the yard. He inquired of L. C. Jackson about the ownership of the vehicles. L. C. Jackson pointed out to the officer certain vehicles belonging to his son W. E. Jackson, the claimant in this case, but told the officer that the other vehicles, including the G.M.C. truck, belonged to him, L. C. Jackson.

The only evidence offered by the claimant W. E. Jackson was his testimony to the effect that he was the owner of the truck. Later, on motion of the claimant's counsel, all of his testimony was stricken, after the Court announced that if the truck should be forfeited, W. E. Jackson's claim for remission or mitigation could be heard and considered later. L. C. Jackson was present in Court at the trial but was not placed on the stand.

Here we have a truck which on December 11, 1953, belonged to L. C. Jackson of Loganville, Georgia. Loganville, Georgia, is some thirty miles from Atlanta, Georgia. Whether or not W. E. Jackson became the owner of said truck on January 16, 1954, which question may have to be decided later, we find this truck going to Atlanta, Georgia, on February 1, February 23, and March 6, 1954, and obtaining materials, sugar, bran, and yeast, which can conveniently be used in the manufacture of whiskey, and we find that L. C. Jackson and W. E. Jackson each accompanied this truck to Atlanta on one or more of these occasions. Moreover, the record is silent as to how it is that those who accompanied the truck to Atlanta for these materials represented to the supplier of these materials that the name and address of the person to whom these materials were sold or delivered was on one occasion Ray Claxton of Powder Springs, Georgia, and on the other two occasions Jim Sawyer of Redan, Georgia.

This circumstance calls to mind the case of Godette v. United States, 4 Cir., 199 F.2d 331, and raises a serious question as to the innocence of the intent of the parties resorting to subterfuge.

We find this truck immediately in rear of the home of L. C. Jackson on March 5, 1954, containing 500 pounds of sugar, 100 pounds of malt, and 2 packages of yeast. On this occasion no one respond-

ed to the knock of the state officers, although a baby was crying inside the home.

Then on March 12, 1954, L. C. Jackson and Robert Williams, Sr., were apprehended at a still. At the still was found mash made of sugar, one of the materials transported on this truck. This distillery was some three miles from the home of L. C. Jackson, some 500 yards from the home of Robert Williams, Sr., these homes being approximately two and a half miles apart, and some 300 yards from an unloading place where a truck with tires like this truck's tires—mud-grip tires—had stopped and where apparently barrels had been unloaded. L. C. Jackson, being arrested at the distillery, stated that his son had brought him to this still in the truck. He gave to the officers the ignition key to this truck which on this occasion was found in rear of the home of Robert Williams, Sr.

The claimant W. E. Jackson, whose father L. C. Jackson was also in Court at the trial, must have had it in his power to explain the three trips of this truck to Atlanta to obtain sugar, malt, and yeast and to explain also how the apparently fictitious names and addresses were used on these three occasions. His failure to offer such explanation may be considered against him. Williams v. United States, 5 Cir., 199 F. 2d 921; Stagner v. United States, 5 Cir., 197 F.2d 992, 994. In this case we have the "persistent and portentous silence of claimant" referred to in the Stagner case supra.

This truck on February 1, 1954, transported sugar, malt, and yeast, and again on February 23, 1954, transported sugar, malt, and yeast, and on March 6, 1954, transported yeast and sugar. As was said by Judge Russell in the Williams case supra, this transportation was "in combinations which are generally used in the manufacture of illicit whiskey."

After considering the evidence and briefs submitted by counsel, the Court makes its findings of material facts and states separately its conclusions of law in the case as follows:

## Findings of Fact

1. Said 1953 model G.M.C. pickup truck, Motor No. A–228496500 was legally seized on land in Walton County, Georgia, within the Middle District of Georgia, on March 12, 1954.

2. On February 1, 1954, said truck was used in the removal, deposit, and concealment of 500 pounds of sugar, 100 pounds of malt, and 4 pounds of yeast, and on February 23, 1954, in the removal, deposit, and concealment of 600 pounds of sugar, 100 pounds of malt and 4 pounds of yeast, and on March 6, 1954, in the removal, deposit, and concealment of 500 pounds of sugar, and 4 pounds of yeast, which sugar, malt, and yeast are materials proper, used, and intended to be used for and in the production of distilled spirits whereon a tax is imposed by the laws of the United States, which tax had not been paid nor was the same to be paid, with intent to defraud the United States of the tax due on the distilled spirits produced and intended to be produced at that certain distillery in Walton County, Georgia, where L. C. Jackson, Robert Williams, Sr., and others were apprehended on March 12, 1954, and with said materials.

3. Said truck was used by L. C. Jackson and Robert Williams, Sr., on and between the dates February 1, 1954, and March 12, 1954, in violation of the Internal Revenue laws of the United States in the operation of said distillery for the production of distilled spirits whereon a tax is imposed by the laws of the United States which tax had not been paid nor was the same to be paid and said distillery had not been registered nor had bond therefor been given, and said truck was then and there so used in the removal, deposit, and concealment of sugar, malt, and yeast as above recited in these findings of fact.

## Conclusions of Law

1. This Court has jurisdiction of this action under Title 28, Section 1356 of the United States Code Annotated.

2. This Court has jurisdiction of said truck.

3. Said truck by reason of its illegal use, as shown by the evidence in this case and as stated in the foregoing findings of fact, became, is, and is hereby declared and ordered to be forfeited to the United States.

4. Entry of an appropriate judgment in accordance herewith is hereby directed.